1 **EDLESON & REZZO**

2 L.B. Chip Edleson (Bar No. 097195)
Joann F. Rezzo (Bar No. 185675)
3 Emerald Plaza
402 West Broadway, 27th Floor
4 San Diego, CA 92101-8567
Tel: 619-230-8402
5 Fax: 619-230-1839

6 Attorneys for Plaintiff
PENINSULA LIFE SETTLEMENT FUND SPC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENINSULA LIFE SETTLEMENT FUND SPC, a Cayman Islands corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, a North Carolina corporation,<br><br>Defendant. | CASE NO. 10-CV-1256-L-WMC<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **DECLARATORY RELIEF**<br>2. **BREACH OF CONTRACT**<br>3. **TORTIOUS BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**<br>4. **FRAUD**<br>5. **NEGLIGENT MISREPRESENTATION**<br><br>**DEMAND FOR JURY TRIAL** |

The plaintiff alleges:

## THE PARTIES, JURISDICTION, AND VENUE

1. This Court has diversity jurisdiction over this matter pursuant to 28 United States Code § 1332 because the amount in controversy exceeds the sum of $75,000 and there is diversity of citizenship between all the parties. Plaintiff Peninsula Life Settlement Fund SPC ("Peninsula") is a corporation incorporated in the Cayman Islands, with its principal place of business in the District of Columbia. Defendant The Lincoln National Insurance Company ("Lincoln") is a life insurance company organized under the laws of the State of Indiana with its principal place of business in Greensboro, North Carolina.

2. Venue is proper in this judicial district based upon removal of the action from the Superior Court of California, County of San Diego, and pursuant to 29 United States Code § 1132 because the contract at issue was entered into in San Diego County, and the insured under the contract at issue continues to reside in San Diego County.

## FIRST CAUSE OF ACTION

### Declaratory Relief

3. On June 15, 2005, Jefferson-Pilot Life Insurance Company ("Jefferson-Pilot") issued a life insurance policy, number JF-5515293 ("the Policy"), to Nancy D. Kronemyer who was 83 years old at the time. The Policy provided life insurance coverage of $5 million dollars.

4. In 2006, Jefferson-Pilot merged into Lincoln. At that time Lincoln assumed all the obligations under the Policy.

5. On August 24, 2007, Peninsula paid $1,218,709.33 to Mrs. Kronemyer to purchase her rights and to assume her obligations under the Policy. She and Peninsula signed all the appropriate forms provided and required by Lincoln to make this change in order to properly modify the insurance contract.

6. On December 18, 2008, Peninsula placed the Policy in a securities account with Wells Fargo Bank, N.A. ("Wells Fargo"), and Peninsula held the entitlement holder rights to the securities account. Wells Fargo, as securities intermediary, became the legal owner of the Policy for the benefit of, and in a fiduciary capacity for, Peninsula. Peninsula and Wells Fargo signed all

the appropriate forms provided and required by Lincoln to make this change in order to properly modify the insurance contract. These forms expressly stated that Mrs. Kronemyer remained the insured, that Wells Fargo was the new owner and beneficiary, and that "Premiums under this policy are to be paid by and premium notices, if any, sent to: Peninsula ..."

7. On January 13, 2009, Lincoln sent a written acknowledgement to Peninsula stating that the Policy had "been changed as requested" and that the "endorsements should be placed with the policy as they are now considered permanent parts of the contract."

8. On February 17, March 12, and April 8 of 2009, Peninsula's agent, Life Policy Dynamics, LLC ("LPD"), a company hired by Peninsula to service the Policy and similar insurance contracts, spoke via telephone with Lincoln's customer service department to verify the status of the insurance policy. On each of these occasions Lincoln represented that the Policy had an active status and was in good standing, and further described the details related to the premiums and values of the Policy. Lincoln said nothing about any problems with payment of premiums, any past due premiums, or that the Policy was about to be canceled for non-payment of premiums.

9. On the same day that Lincoln confirmed the active status and good standing of the Policy, March 12, 2009, Lincoln sent a notice to Wells Fargo stating that premiums had not been paid, the Policy had entered a grace period, and unless Lincoln received a payment of $54,334.90 prior to April 16, 2009, the Policy would "lapse" and "permanently lose any guaranteed coverage." Despite Lincoln's prior written acknowledgement that Peninsula was the responsible party to receive notices regarding premiums, Lincoln failed to send the notice to Peninsula. Lincoln had similarly failed to send the previous premium notices to Peninsula that resulted in the grace period.

10. On April 22, 2009, Lincoln sent another notice to Wells Fargo stating that it had terminated the Policy due to lack of premium payment. Again Lincoln failed to send the notice to Peninsula. As of this date, Peninsula had paid $1,707,602.39 for the Policy.

11. On April 28, 2009, Wells Fargo provided Peninsula with a copy of the termination notice sent by Lincoln.

12. The termination notice outlined the process for obtaining reinstatement, including payment of $140,847.07 by no later than July 21, 2009.

13. Immediately after receiving the termination letter, on April 29, 2009, Peninsula contacted Lincoln by both email and telephone to discuss the exact procedure to obtain reinstatement of the Policy. As instructed, Peninsula obtained a complete reinstatement application executed by Mrs. Kronemyer. On May 13, 2009, Peninsula sent Lincoln the reinstatement application with a check in the amount of $141,000.00 and a cover letter indicating the reasons for the reinstatement request. Peninsula complied with all of Lincoln's stated requirements for reinstatement of the Policy.

14. Peninsula confirmed Lincoln's receipt of the reinstatement application by phone call on May 14, 2009.

15. Lincoln cashed the $141,000.00 premium check sent for reinstatement of the Policy.

16. Following submission of the reinstatement application with the payment requested, Peninsula contacted Lincoln on a weekly basis to obtain updates on the status of the Policy.

17. Without explanation, over 90 days after receipt and deposit of Peninsula's premium payment, Lincoln sent a check dated August 24, 2009, for refund of the $141,000.00 payment.

18. On April 28, 2010, after Lincoln repeatedly rejected Peninsula's requests to reinstate the Policy, Peninsula obtained an assignment from Wells Fargo of all rights as owner or beneficiary of the Policy against Lincoln "arising from or related to: (i) Lincoln's refusal or failure to reinstate the Policy; (ii) Lincoln's failure to provide proper notice that the premiums on the Policy were due; (iii) Lincoln's failure to provide proper notice that the Policy had entered into a grace period; (iv) Lincoln's failure to provide proper notice that the Policy had lapsed; and (v) Lincoln's lapsing of the Policy. Accordingly, in making the claims set forth in this Complaint, Peninsula is acting as the assignee of Wells Fargo's rights against Lincoln as well as Peninsula's own rights.

19. There is an existing controversy between Peninsula and Lincoln concerning the Policy. Lincoln contends that it had no obligation to give Peninsula notice of premiums due, including premiums due as part of the grace notice and lapse notice, and that it properly

terminated the Policy. Peninsula contends that Lincoln had no contractual right to terminate the Policy because Lincoln failed to give required notices of premiums due to Peninsula, including notice of pending termination and notice of lapse. In addition, Peninsula contends that Lincoln waived any right to refuse reinstatement of the policy by cashing the reinstatement premium check of $141,000.00. Finally, Peninsula contends it had a contractual right to reinstatement of the policy by timely submitting a completed reinstatement application with the required premium along with all additional information requested by Lincoln.

20. Peninsula is entitled to a declaration that the Policy remains in full force and effect, subject only to Peninsula's payment of any premiums due on the Policy.

## SECOND CAUSE OF ACTION

### Breach of Contract

21. Peninsula incorporates here by reference paragraphs 1 through 18.

22. Lincoln breached its contract of insurance in several respects, including:

(a) Lincoln failed to provide notices as required by the Policy. Specifically, the contract, as amended, expressly called for Lincoln to provide premium notices to Peninsula, yet Lincoln failed to provide the notices to Peninsula. Lincoln failed to notify Peninsula that the Policy had entered into a grace period for non-payment of premium and was about to be terminated if premiums were not paid, Lincoln failed to notify Peninsula that it had terminated the Policy and that Peninsula had to act immediately to obtain reinstatement, and Lincoln failed to provide other notices of premiums due prior to the grace and lapse notices.

(b) Lincoln failed to reinstate the Policy after terminating it. Specifically, Lincoln refused reinstatement even though Peninsula complied with all conditions of reinstatement in the Policy as well as all conditions reasonably required by Lincoln. Peninsula provided all past due premiums together with satisfactory evidence of insurability. Pursuant to California law, Lincoln had no arbitrary or discretionary right to refuse reinstatement after Peninsula had complied with all the conditions of reinstatement.

(c) Lincoln refused to reinstate the Policy after cashing Peninsula's payment of the premium to reinstate the Policy, and despite failing to refund the premium for three months.

Pursuant to California law, Lincoln waived any right to refuse reinstatement by cashing the premium payment.

23. Peninsula fully complied with all terms of the Policy except as to terms that Lincoln prevented it from performing or waived performance.

24. As a result of Lincoln's wrongful conduct, Peninsula has lost the $5 million dollars of insurance on the life of Mrs. Kronemyer after paying nearly $2 million in premiums. The exact amount of Peninsula's loss, considering the life expectancy of Mrs. Kronemyer, unpaid premiums, and the present value of the $5 million in life insurance coverage, will be subject to proof at the time of trial.

## THIRD CAUSE OF ACTION

Tortious Breach of the Duty of Good Faith and Fair Dealing

25. Peninsula incorporates here by reference paragraphs 1 through 18 and 22 through 24.

26. The insurance contract sold and issued by Lincoln contained an implied promise that neither party would do anything to injure, frustrate, or interfere with the rights of the other party to receive the benefits of the contract. This implied promise imposed a duty of good faith and fair dealing on the parties, and specifically obligated Lincoln to act reasonably rather than to purposefully seek to deprive Peninsula of the benefits of the Policy. In addition, this implied promise imposed on Lincoln the duty to act in a fair and honest manner.

27. Lincoln breached its duty to act fairly and in good faith in many respects, including:

(a) In order to avoid continuing coverage and eventual payment of $5 million in life insurance coverage on the life of an elderly woman then 87 years old, while keeping nearly $2 million in premium payments, Lincoln deliberately sought to hide from Peninsula the status of premiums due by failing to send notices to Peninsula of premiums due, including the grace and lapse notices, and by repeatedly reassuring Peninsula in status calls that the policy was in force and in good standing while failing to disclose the whole truth that premiums were past due and the Policy was either about to be or had been terminated.

(b) In order to avoid continuing coverage and eventual payment of $5 million in life insurance coverage on the life of an elderly woman then 87 years old, while keeping nearly

$2 million in premium payments, Lincoln refused Peninsula's request for reinstatement of the Policy despite lacking any reasonable basis to do so, despite having a practice to reinstate in similar circumstances involving less money, and despite information from attorneys clearly explaining why Lincoln should reinstate the Policy. Lincoln further acted unreasonably and in bad faith by initially failing to give any explanation for its refusal to reinstate the Policy and then by providing dishonest reasons for refusing reinstatement. In addition, Lincoln knew or should have known that California law required it to reinstate the policy because Peninsula had complied with all the conditions of reinstatement pursuant to *Kennedy v. Occidental Life Ins. Co.,* 18 Cal.2d 627, 630-631 (1941).

(c) In order to avoid continuing coverage and eventual payment of $5 million in life insurance coverage on the life of an elderly woman then 87 years old, while keeping nearly $2 million in premium payments, Lincoln refused Peninsula's request for reinstatement of the Policy despite cashing the reinstatement premium payment of $141,000.00 and then having use of the money for three months. Lincoln definitely knew very well that California law required it to reinstate the policy based on its deposit of the payment sent by Peninsula pursuant to *Mardirosian v. Lincoln Nat'l Life Ins. Co.*, 739 F.2d 474, 475-479 (9th Cir. 1984), and *Ryman v. American National Life Insurance Company*, 5 Cal. 3d 620 636 (1971).

28. As a result of Lincoln's wrongful conduct, Peninsula has lost or will lose the benefits and payments as previously alleged. In addition, Peninsula has incurred attorneys' fees as a direct result of Lincoln's bad faith conduct.

29. Lincoln has acted towards Peninsula with a conscious disregard of its rights and with malice, fraud, or oppression so as to justify an award of exemplary and punitive damages under California Civil Code section 3294 in a sum according to proof sufficient to punish Lincoln and to deter it and other insurers from similar conduct.

FOURTH CAUSE OF ACTION

Fraud

30. Peninsula incorporates here by reference paragraphs 1 through 18, 24 and 29.

31. Peninsula is informed and believes, and on that basis alleges, that Lincoln

intentionally misrepresented material facts and purposefully concealed material facts while disclosing other facts in a manner as to distort the true facts and circumstances. Lincoln did so in an attempt to deceive Peninsula and cause coverage under the Policy to terminate with the result that Lincoln could avoid paying $5 million in life insurance coverage on the life of an elderly woman then 87 years old, and so that Lincoln could keep the nearly $2 million in premium payments made on the Policy. Specifically, Lincoln deliberately concealed from Peninsula the amount and dates when premiums were due. Instead, Lincoln repeatedly assured Peninsula's agents in status calls that the policy was in force and in good standing while failing to disclose the whole truth that premiums were past due and the Policy was either about to be or had been terminated.

32. Lincoln's misrepresentations and concealment were false and misleading, and known and intended by Lincoln to be false and misleading. Lincoln intended that Peninsula rely on its false representations and concealment.

33. Peninsula reasonably relied on Lincoln's misrepresentations and concealment by failing to pay premiums required to keep the Policy from lapsing, and then by failing to more promptly request reinstatement of the Policy.

### SIXTH CAUSE OF ACTION

Negligent Misrepresentation

34. Peninsula incorporates here by reference paragraphs 1 through 18 and 24.

35. Lincoln should have known that its representations concerning the Policy were false and misleading.

36. Peninsula reasonably relied on Lincoln's representations by failing to pay premiums required to keep the Policy from lapsing, and then by failing to more promptly request reinstatement of the Policy.

ACCORDINGLY, the plaintiff requests a judgment for:

1. A declaration reinstating the Policy;

2. General damages according to proof;

3. Attorneys' fees;

1    4. Punitive damages according to proof;

2    5. Prejudgment interest;

3    6. Costs; and

4    7. Other relief as the court deems proper.

JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  July 22, 2010

**EDLESON & REZZO**

By  */s/ Joann F. Rezzo*
L. B. CHIP EDLESON
LEdleson@aol.com
JOANN F. REZZO
JRezzo@san.rr.com
Attorneys for Plaintiff
PENINSULA LIFE SETTLEMENT FUND SPC